IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-00100-01-CR-W-DW |
| ) | |
| WESLEY T. FRASHER, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant's Motion to Suppress Evidence (doc #42). For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On April 14, 2008, the Grand Jury returned a one count indictment against defendant Wesley T. Frasher. The indictment charges that on March 25, 2008, defendant Frasher, having been convicted of crimes punishable by imprisonment for terms exceeding one year, knowingly possessed two firearms, a .22 caliber rifle and a .22 magnum revolver.

On September 2, 2009, an evidentiary hearing was held on defendant's motion to suppress. Defendant Frasher was represented by William J. Raymond of the Federal Public Defender's Office. The Government was represented by Assistant United States Attorney Bruce Clark. The Government called Officers Matthew Tilley and Dan Fries of the Independence, Missouri Police Department as witnesses. Daniel Frasher, defendant's father, testified on behalf of the defense.

II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On March 25, 2008, Officer Matthew Tilley was asked to assist Office Dan Fries on a call he was working. (Tr. at 6) Officer Tilley drove toward the area that Officer Fries indicated the vehicle in question was driving. (Tr. at 8) Officer Tilley activated his dashboard camera. (Tr. at 8)

2. Officer Fries was stopped in a business district parking lot. (Tr. at 13) As Officer

Tilley was following a vehicle he believed to be the vehicle in question, he drove by Officer Fries' location and asked Officer Fries if this was the vehicle. (Tr. at 13; Government's Ex. 1) Officer Fries confirmed that it was. (Tr. at 15; Government's Ex. 1) Officer Fries directed Officer Tilley to stop the vehicle. (Government's Ex. 1) Officer Fries advised Officer Tilley that the driver had been driving in a careless and imprudent ("C and I") manner and that Fries could sign on the "C and I" as a complainant. (Tr. at 14, 73; Government's Ex. 1) Officer Tilley advised that driving in a careless and imprudent manner is a violation in the City of Independence. (Tr. at 14)

3. Up to this point, Officer Tilley had not activated his emergency lights or siren while following the subject vehicle. (Tr. at 14; Government's Ex. 1) After the subject vehicle stopped in the parking lot of the Salty Iguana and the driver and passenger exited the vehicle, Officer Tilley pulled in behind the vehicle and activated his emergency lights. (Tr. at 15; Government's Ex. 1) Officer Tilley asked the driver (defendant Frasher) and passenger (Ashli Countryman) what they were up to. (Government's Ex. 1) Officer Tilley was trying to gain information from both Frasher and Countryman about their interactions with the officers on the call that Officer Fries had been on. (Tr. at 16) Officer Tilley knew that there had been a domestic disturbance call, possibly involving an assault, but he did not know if Frasher and Countryman had been involved in that call. (Tr. at 16) Frasher and Countryman told Officer Tilley that the officers had said that Countryman could leave and she had called Frasher to pick her up. (Government's Ex. 1)

4. Officer Tilley asked defendant Frasher and Ms. Countryman for identification. (Government's Ex. 1) Countryman did not have an ID with her. (Government's Ex. 1) Frasher advised Officer Tilley that he had an outstanding traffic warrant. (Tr. at 17; Government's Ex. 1) Officer Tilley ran Frasher's name in the computer system to confirm this. (Tr. at 16-17) Frasher told Officer Tilley that the vehicle belonged to his father. (Government's Ex. 1) When asked by Officer Tilley why the plates did not match the car, Frasher advised that he had switched them over to this car. (Government's Ex. 1)

5. Defendant Frasher was placed under arrest on the outstanding Independence warrant. (Tr. at 18; Government's Ex. 1) Officer Tilley told Frasher that if the Salty Iguana did not mind, the car could stay in the Salty Iguana parking lot until someone could pick it up. (Tr. at 18-19; Government's Ex. 1) Officer Tilley testified that as a new officer,[1] he also needed to verify with a supervisor or a senior officer that it was alright for the car to stay there. (Tr. at 19) Officer Tilley testified that Frasher did not have a right to a tow waiver. (Tr. at 61) Frasher called his father to have him pick up the car. (Tr. at 19-20; Government's Ex. 1)

6. Approximately ten minutes after defendant Frasher had been detained, Officer Fries arrived at the scene and asked Officer Tilley if he had searched the car. (Tr. at 52, 76; Government's Ex. 1) Officer Tilley replied that he had not. (Government's Ex. 1) Officer Fries told Officer Tilley that he would help him search and with the tow report. (Government's Ex. 1) Officer Fries testified that 99 percent of the time, if the driver of a vehicle is going to jail and the vehicle is on private property, the vehicle is going to be towed. (Tr. at 77-78) However, the arresting officer does have

---

[1] Officer Tilley became a commissioned police officer on August 3, 2006. (Tr. at 26)

2

discretion to allow an arrested driver to leave the vehicle with a responsible party. (Tr. at 88) It was in Officer Fries' mind that this vehicle was going to be towed. (Tr. at 77)

7. The Independence Police General Order on Abandoned Property and Police Towing Policy provides the following with respect to police towing of vehicles from private property:

> (B) <u>Towing authorized by the Independence Police Department</u>–Police towing of vehicles without consent or warrant from private property is authorized only under the following conditions:
>
> * * *
>
> (2) When the officer takes the driver of a vehicle into custody, and such vehicle would thereby be left unattended on private property to which it is not registered and the owner or other responsible party, not impaired by either alcohol or drugs, can not take immediate custody of it.

(Tr. at 22-23; Government's Ex. 4 at p.4) The General Order further provides:

> <u>Inventory Search of Seized Vehicle Required</u>
>
> ■ Pursuant to General Order PD95-033, Law Enforcement Role and Authority, an inventory search will be conducted on any vehicle seized by a member of the department. ...

(Tr. at 23; Government's Ex. 4 at p.2) Once a vehicle is seized for a police tow, an inventory search is required. (Tr. at 24, 80)

8. Officer Tilley testified that there was no one who could take immediate custody of the vehicle. (Tr. at 23) Officer Tilley testified that while there are instances where the police have discretion to do tow waivers, these waivers have to be approved by a supervisor or a senior officer. (Tr. at 25) In this case, Officer Fries and Sergeant Blackmar responded to the scene and Officer Fries started the procedure for towing the vehicle and performing an inventory search. (Tr. at 25) Officer Tilley did not discuss with Officer Fries the option of a tow waiver or the fact that defendant Frasher had called his father. (Tr. at 25) Standard protocol was to have the vehicle towed. (Tr. at 61) Officer Tilley assumed that since standard protocol was to have the vehicle towed, that was what he should have been doing. (Tr. at 62) Officer Fries had been one of Officer Tilley's field training officers. (Tr. at 62)

9. During the course of the search, weapons and methamphetamine were recovered. (Tr. at 24, 55) Officer Tilley testified that prior to the search, he had no reason to believe there were guns or drugs inside the vehicle. (Tr. at 55)

10. Daniel Frasher, defendant's father, did not show up during the course of the inventory search. (Tr. at 62-63) Mr. Frasher testified that just as he was getting ready to leave to get the car, his son called to say he was at the jail and the car had been towed. (Tr. at 93) Ms. Countryman could not take custody of the vehicle because she did not have a driver's license and the point of someone taking custody

3

of the vehicle is to remove the vehicle from the premises. (Tr. at 63)

### III. DISCUSSION

Defendant Frasher seeks to suppress all evidence seized and statements obtained as a result of the stop of the vehicle driven by defendant on March 25, 2008. In support of his motion, defendant argues "[o]fficers of the Independence, Missouri Police Department illegally seized and arrested Mr. Frasher without sufficient reasonable suspicion to justify the stop and the subsequent search of his vehicle was illegal ...." (Motion to Suppress Evidence (doc #42) at 1)

The record in this case establishes that defendant Frasher had been observed by Officer Fries to be driving in a careless and imprudent manner which is a violation in the City of Independence and that Officer Fries had communicated this violation to Officer Tilley. (See Fact No. 2, supra) The Court may impute the collective knowledge of the police officers conducting an investigation to the individual officer who initiated the traffic stop when there is communication between the officers. See United States v. Thompson, 533 F.3d 964, 969 (8th Cir. 2008). See also United States v. Allison, 616 F.2d 779, 782 (5th Cir.)(reasonable suspicion for car stop may exist on collective knowledge of police when there is reliable communication between officer supplying information and officer acting on that information), cert. denied, 449 U.S. 857 (1980). The Court, therefore, finds that the initial stop of defendant Frasher's vehicle was lawful. As the Eighth Circuit Court of Appeals has observed, "a traffic violation–however minor–creates probable cause to stop the driver of the vehicle." United States v. Lyons, 486 F.3d 367, 371 (8th Cir. 2007); United States v. Gregory, 302 F.3d 805, 809 (8th Cir. 2002), cert. denied, 538 U.S. 992 (2003); United States v. Foley, 206 F.3d 802, 805 (8th Cir. 2000).

The fact that Officer Fries might also have wanted the vehicle stopped based on the fact that the driver had picked up Ashli Countryman following the domestic disturbance call does not invalidate the traffic stop. In United States v. Cummins, 920 F.2d 498 (8th Cir. 1990), cert. denied, 502 U.S. 962 (1991), the Eighth Circuit Court of Appeals found:

> In our view, this otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some

> sort of criminal activity. It is also our view that the stop remains valid even if the officer would have ignored the traffic violation but for his other suspicions.

Id. at 501. See also United States v. Herrera-Gonzalez, 474 F.3d 1105, 1109 (8th Cir. 2007)("the subjective intentions of the officer making the stop are irrelevant in determining the validity of the stop"); United States v. Coney, 456 F.3d 850, 855-56 (8th Cir. 2006)(officer had probable cause to conduct traffic stop when he observed minor traffic violation, even if traffic stop was pretext for other investigation).

After he was stopped, defendant Frasher advised Officer Tilley that he had an outstanding traffic warrant. (See Fact No. 4, supra) Officer Tilley ran Frasher's name through his computer system and confirmed the outstanding warrant. (Id.) Officer Tilley was justified in placing defendant under arrest for the outstanding warrant.

The search of the vehicle which followed was permissible as an inventory search. See United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990), cert. denied, 502 U.S. 962 (1991). A warrantless inventory search of a vehicle is valid if it is conducted pursuant to standardized police procedures and not done in bad faith or for the sole purpose of investigation. See Colorado v. Bertine, 479 U.S. 367, 372 (1987). As set forth above, defendant Frasher had been placed under arrest. (See Fact No. 5, supra) The Independence Police Towing Policy provides that police towing of a vehicle is authorized "[w]hen the officer takes the driver of a vehicle into custody, and such vehicle would thereby be left unattended on private property to which it is not registered and the owner or other responsible party ... can not take immediate custody of it." (See Fact No. 7, supra) It was determined that Ms. Countryman did not have a driver's license on her so she was unable to take custody and remove the vehicle from the private property. (See Fact Nos. 4 and 10, supra) The owner of the vehicle, defendant Frasher's father, was not present to take immediate custody of the vehicle. (See Fact Nos. 4 and 5, supra) Standard protocol was to have the vehicle towed. (See Fact No. 8, supra) While Officer Tilley allowed defendant Frasher to call his father to see if he could pick up the vehicle, the business upon whose property the vehicle was parked would have to agree to letting the vehicle remain until it was picked up and a supervisor or senior officer would have to

5

approve a tow waiver. (See Fact Nos. 5 and 8, supra) Upon his arrival at the scene, Officer Fries, a senior officer who had been one of Officer Tilley's field training officers, started the procedure for towing the vehicle. (See Fact No. 8, supra) Officer Tilley did not discuss with Officer Fries the option of a tow waiver or the fact that defendant Frasher had called his father. (Id.) Officer Tilley assumed that since standard protocol was to have the vehicle towed, that was what he should have been doing. (Id.) Defendant Frasher did not have a right to a tow waiver. (See Fact No. 5, supra) It is standard police procedure to inventory a vehicle prior to towing it. (See Fact No. 7, supra) The Court finds that the inventory search was conducted pursuant to standardized police procedures and that it was not done in bad faith or for the sole purpose of investigation. No constitutional violation took place.

## IV. CONCLUSION

Given the Court's finding that the initial stop of the vehicle and the subsequent arrest of defendant Frasher were proper, there is no basis for suppression. Therefore, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Frasher's Motion to Suppress Evidence (doc #42).

Counsel are reminded they have ten days in which to file any objections to this Report and Recommendation. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                                   */s/ Sarah W. Hays*
                                                    SARAH W. HAYS
                              UNITED STATES MAGISTRATE JUDGE